Robert A. Faucher (ISB # 4745)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone:    (208) 342-5000
Facsimile:    (208) 343-8869
E-mail: rfaucher@hollandhart.com

Attorneys for Randall H. Hopkins, Plan Agent

# IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>HOPKINS GROWTH FUND, L.L.C.,<br><br>Debtor. | Case No. 13-02275-JDP |

## DECLARATION OF ROBERT A. FAUCHER IN SUPPORT OF PLAN AGENT'S MOTION FOR APPROVAL OF SALE OF TAMARACK-RELATED RIGHTS

I, Robert A. Faucher, declare and states as follows:

1.   I am a partner with the firm of Holland & Hart LLP and am duly licensed to practice law in the State of Idaho.

2.   I represent Plan Agent Randall H. Hopkins in the above-captioned bankruptcy case. I make this declaration in support of the Plan Agent's Motion for Approval of Sale of Tamarack-Related Rights and Notice Thereof.

3.   Attached hereto as **Exhibit A** is a true and correct copy of the Purchase and Sale Agreement to which Plan Agent is a party.

DECLARATION OF ROBERT A. FAUCHER IN SUPPORT OF PLAN AGENT'S MOTION FOR APPROVAL OF SALE OF TAMARACK-RELATED RIGHTS - 1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 31st day of May, 2019.

                                            */s/ Robert A. Faucher*
                                              Robert A. Faucher

12580620_1.docx

DECLARATION OF ROBERT A. FAUCHER IN SUPPORT OF PLAN AGENT'S MOTION
FOR APPROVAL OF SALE OF TAMARACK-RELATED RIGHTS - 2

Case 13-02275-JDP    Doc 603-1    Filed 05/31/19    Entered 05/31/19 15:43:29    Desc
Declaration of Robert A. Faucher    Page 3 of 18

# EXHIBIT A

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (the "Agreement") is entered into this 24th day of May, 2019, between and among IAI Golf, LLC, an Idaho limited liability company ("Buyer"); Tamarack Mountain Operations, LLC, an Idaho limited liability company ("Optionee"); Randy Hopkins, in his capacity as Plan Agent for Hopkins Growth Fund, LLC ("Growth Agent"); Randy Hopkins, in his capacity as Plan Agent for Hopkins Northwest Fund, LLC ("Northwest Agent"); and Jonathan Zurkoff ("Zurkoff"). Growth Agent, Northwest Agent and Zurkoff are collectively referred to herein as "Sellers."

WITNESSETH, THAT:

WHEREAS, Buyer desires to purchase from Sellers interests Sellers have with respect to an option to purchase real property in Valley County, Idaho; and

WHEREAS, Sellers desire to sell their interests in the option to Buyer; and

WHEREAS, the parties are entering into this Agreement to govern the purchase and sale of the interests,

NOW, THEREFORE, in consideration of the premises and the mutual covenants, and in reliance on the representations and warranties, and subject to and in accordance with the conditions, all as hereinafter set forth, the parties hereto agree as follows:

**Section 1. Definitions.** All capitalized terms used in this Agreement but not defined in this Agreement are used as defined in the Operating Agreement, as hereinafter defined. In addition to those terms defined at other places in this Agreement or in the Operating Agreement, the following terms shall have the following meanings:

    a. "Affiliate" means Buyer, Optionee, the Imperium Companies, or an affiliate of any of the foregoing.

    b. "Bankruptcy Cases" means the bankruptcy cases of Hopkins Growth Fund, LLC, Case No. 13-02275-JDP and Hopkins Northwest Fund, LLC, Case No. 14-005440-JDP, in the Bankruptcy Court.

    c. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho.

    d. "Debtors" means Hopkins Growth Fund, LLC and Hopkins Northwest Fund, LLC.

    e. "Interests" means the respective rights, title and interests of Sellers in and with respect to Tamarack Resort's Option.

    f. "IPI" means Idaho Pacific Investments, LLC, an Idaho limited liability company.

PURCHASE AND SALE AGREEMENT - 1

55809.0002.11943489.1

g. "Operating Agreement" means the Operating Agreement of West Mountain Golf, LLC, dated as of December 3, 2004.

h. "Oversight Committees" means the respective creditor Oversight Committees created in each of the Bankruptcy Cases.

i. "Plan Agents" means Growth Agent and Northwest Agent, collectively.

j. "Subject Property" means that real property identified at Exhibit 1.j hereto, which is a portion of the Golf Property, as defined in the Operating Agreement.

**Section 2. Representations of Growth Agent and Northwest Agent.** Growth Agent and Northwest Agent represent as follows to Buyer and Optionee:

a. Growth Agent is the successor to Hopkins Growth Fund, LLC.

b. Northwest Agent is the successor to Hopkins Northwest Fund, LLC.

c. Debtors and Agents have never previously sold or encumbered their respective Interests.

d. The Operating Agreement was assumed in each of the Bankruptcy Cases.

**Section 3. Representations of Zurkoff.** Zurkoff represents and warrants to Buyer that he has never previously sold or encumbered his Interests.

**Section 4. Representations of Buyer.** Buyer and Optionee represent as follows to Sellers:

a. They are affiliates.

b. Optionee is the successor to the optionee's interest in Tamarack Resort's Option.

c. Buyer, Optionee and their affiliates have the present intention to purchase the Subject Property, including without limitation by prosecuting Tamarack Resort's Option.

d. Buyer, Optionee and their affiliates have the resources necessary to purchase the Subject Property, including without limitation by prosecuting Tamarack Resort's Option.

e. IPI owns the Subject Property subject to the terms of Tamarack Resort's Option.

f. Buyer is a limited liability company duly organized and validly existing under laws of the State of Idaho.

g. The execution and delivery of this Agreement by Buyer and the performance by Buyer of the obligations by it to be performed hereunder have been duly authorized by all necessary corporate action.

h. The execution, delivery and performance of this Agreement by Buyer do not, and will not, violate the operating agreement of Buyer, or, in any material respect, any provisions of

PURCHASE AND SALE AGREEMENT - 2

any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award to which Buyer is a party or by which Buyer or its properties are bound, presently in effect having applicability to Buyer or the transactions contemplated by this Agreement.

  i. The execution, delivery and performance of this Agreement by Buyer do not and will not in any material respect conflict with, result in a breach of, or constitute a default under any of the terms, provisions, or conditions of any indenture or loan or credit agreement or any other agreement, or instrument to which Buyer is a party or by which it or its properties may be bound or affected.

  j. This Agreement constitutes a legal, valid and binding obligation of Buyer enforceable against Buyer according to its terms, except to the extent that the enforceability hereof may be affected or limited by (i) bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting the enforcement of creditors' rights generally, and (ii) general principles of equity (regardless of whether considered in a proceeding in equity or at law) and the discretion of any court before which any proceeding may be pending.

  k. There is no proceeding of any kind by or against Buyer or contemplated by Buyer, including, but not limited to, any litigation, arbitration, judicial or administrative proceeding, which would under any circumstances have a material adverse effect on the execution, delivery, performance, or enforceability of this Agreement.

  l. Optionee is a limited liability company duly organized and validly existing under laws of the State of Idaho.

  m. The execution and delivery of this Agreement by Optionee and the performance by Optionee of the obligations by it to be performed hereunder have been duly authorized by all necessary corporate action.

  n. The execution, delivery and performance of this Agreement by Optionee do not, and will not, violate the charter or operating agreement of Optionee, or, in any material respect, any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award to which Optionee is a party or by which Optionee or its properties are bound, presently in effect having applicability to Optionee or the transactions contemplated by this Agreement.

  o. The execution, delivery and performance of this Agreement by Optionee do not and will not in any material respect conflict with, result in a breach of, or constitute a default under any of the terms, provisions, or conditions of any indenture or loan or credit agreement or any other agreement, or instrument to which Optionee is a party or by which it or its properties may be bound or affected.

  p. This Agreement constitutes a legal, valid and binding obligation of Optionee enforceable against Optionee according to its terms, except to the extent that the enforceability hereof may be affected or limited by (i) bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting the enforcement of creditors' rights generally, (ii) general principles of equity (regardless of whether considered in a proceeding in equity or at law) and the discretion of any court before which any proceeding may be pending.

PURCHASE AND SALE AGREEMENT - 3

55809.0002.11943489.1

q. There is no proceeding of any kind by or against Optionee or contemplated by Optionee including, but not limited to, any litigation, arbitration, judicial or administrative proceeding, which would under any circumstances have a material adverse effect on the execution, delivery, performance, or enforceability of this Agreement.

**Section 5. Purchase and Sale of the Interests.**

a. On and subject to the terms and conditions of this Agreement, Buyer agrees to purchase and accept from Plan Agents, and Plan Agents agree to sell, assign, transfer, convey and deliver to Buyer, free and clear of all liens and/or encumbrances, their respective Interests, at the Closing, for the Purchase Price.

b. On and subject to the terms and conditions of this Agreement, Buyer hereby agrees to purchase and accept from Zurkoff, and Zurkoff agrees to sell, assign, transfer, convey and deliver to Buyer, free and clear of all liens and/or encumbrances, his respective Interests, at the Closing, for the Purchase Price.

**Section 6. Conditions Precedent.**

It shall be a condition precedent to Sellers' obligations to perform their obligations under this Agreement:

a. that the Oversight Committees have approved this Agreement and have authorized Plan Agents to consummate the transactions provided for in this Agreement;

b. that the Bankruptcy Court have entered an order in each of the Bankruptcy Cases, reasonably satisfactory in form and content to Plan Agents, authorizing Plan Agents to consummate the transactions provided for this Agreement; and

c. that the Bankruptcy Court's orders authorizing Plan Agents have become final and not subject to appeal.

Should an Oversight Committee or the Bankruptcy Court reject this Agreement, or should these conditions precedent otherwise not be satisfied on or before July 19, 2019, then this Agreement shall be null and void with no further force or effect; provided, however, that the Buyer hereto can extend such date in writing.

The Plan Agents shall use their best efforts to obtain such approvals timely.

**Section 7. Closing.**

Once the conditions precedent identified in section 6 have been satisfied, Buyer and Sellers shall execute any and all documentation necessary or convenient to evidence transfer of the Interests on the terms set forth in this Agreement.

PURCHASE AND SALE AGREEMENT - 4

55809.0002.11943489.1

**Section 8. The Purchase Price.**

 a. It shall be the joint and several obligation of Buyer and Optionee to pay the Purchase Price to Sellers on the terms set forth in this Section 8. The Purchase Price shall be paid to Sellers in immediately available funds.

 b. The amount of the Purchase Price to be paid under this Agreement shall be contingent as determined in this Section 8 of this Agreement. Specifically, the amount of the Purchase Price shall be determined by reference to the Conveyance Consideration, as provided for herein.

 c. The Purchase Price shall be paid within three business days following the later of: (i) delivery of a deed transferring the Subject Property to an Affiliate, and (ii) satisfaction of the conditions precedent set forth in section 6.

 d. The "Conveyance Consideration" shall be the amount of money paid by any Affiliate in consideration of the conveyance of the Subject Property to an Affiliate as a result of a consensual conveyance by IPI or its grantee, and/or as a result of the exercise of Tamarack Resort's Option and/or as a result of any court judgment against IPI or its grantee.

  1. If the Conveyance Consideration is between $0.00 and $649,999.99, the Purchase Price shall be $50,000 plus (50% of [$650,000.00 minus the Conveyance Consideration]).

  2. If the Conveyance Consideration is equal to or greater than $650,000.00 but less than $1,500,000.00, the Purchase Price shall be $50,000.

  3. If the Conveyance Consideration equals or exceeds $1,500,000.00, the Purchase Price shall be zero.

By way of example, if the Conveyance Consideration is $0.00, then the Purchase Price would be $50,000 plus (50% of [$650,000.00-$0.00]) = $375,000.00. If the Conveyance Consideration is $650,000.00, the Purchase Price would be $50,000.00.

Without limitation, the Conveyance Consideration shall include: (i) any sums paid by an Affiliate to IPI or its grantee as part of any arm's-length settlement or consensual transaction; and (ii) any sums paid by an Affiliate to IPI or its grantee pursuant to the judgment of a court. The Conveyance Consideration shall not include any sums paid by an Affiliate to exercise, as Optionee, Tamarack's Purchase Option, to the extent that an Affiliate is entitled to the proceeds of the exercise of the option as a result of Buyer's purchase of the Interests as contemplated herein.

 e. The Purchase Price shall be paid directly to respective Sellers allocated as follows:

  1. Growth Agent - 89.96% of the Purchase Price

  2. Northwest Agent - 9.87% of the Purchase Price

PURCHASE AND SALE AGREEMENT - 5

       3.     Zurkoff - 0.17% of the Purchase Price

**Section 9. Cooperation.**

Sellers agree to cooperate with Buyer as reasonably required in Buyer's and Optionee's, and any of their Affiliates' efforts to exercise Tamarack Resort's Option and purchase the Subject Property.

**Section 10. Termination Period.**

The Agreement shall terminate six (6) months after (a) (i) a final judgment and the resolution of any appeals therefrom of the anticipated lawsuit by Optionee against IPI, or (ii) a negotiated settlement or transaction with IPI regarding the Subject Property, or (b) by the mutual agreement of the Parties hereto.

**Section 11. Confidentiality.**

The Parties acknowledge that some or all of the provisions of this Agreement may need to be disclosed as a result of the process contemplated in Section 6. However, except to the extent necessary to obtain such approvals, Sellers and their agents and attorneys shall keep confidential and not disclose the existence of this Agreement or the terms contained herein to any third party, unless authorized by Buyer.

**Section 12. Assignment.**

    a.    Buyer and Optionee shall be entitled to assign this Agreement to an Affiliate only upon such Affiliate executing and delivering to Plan Agents an assumption by the assignee of the assignor's rights hereunder, which assumption shall be in form and content reasonably satisfactory to Plan Agents in their sole reasonable discretion. The assumption shall not effect a release of the assignor.

    b.    Buyer shall be entitled to assign the Interests to an Affiliate only upon such Affiliate executing and delivering to Plan Agents an assumption by the assignee of the assignor's rights hereunder, which assumption shall be in form and content reasonably satisfactory to Plan Agents in their sole reasonable discretion. The assumption shall not effect a release of the assignor.

    c.    Buyer and Optionee shall have no right to assign this Agreement and the Interests without the Plan Agents' prior written consent, except as set forth in subsections a and b above.

**Section 13. General.**

    a.    Time and prompt performance of each provision of this Agreement is of the essence.

    b.    A wavier by one Party hereto of one or several defaults in performance of any provision of this Agreement to be performed by any other party hereto shall not be construed as

PURCHASE AND SALE AGREEMENT - 6

being a waiver of such provision itself, or of any subsequent default in performance thereof, or of the provisions of this Agreement.

      c.      The Party hereto who is a losing party in any court action to enforce any provisions of this Agreement shall pay the party hereto who is a prevailing party in such court action all reasonable attorney fees incurred in all trial and appellate courts by such prevailing party in addition to all costs allowed by law.

      d.      No modification of this Agreement or waiver of a provision hereof shall be of any force or effect unless the same is in writing and signed by the Parties hereto.

      e.      The Agreement herein applies to, binds, and inures to the benefit of each Party hereto and their personal representatives, executors, administrators, heirs, devisees, legatees, assignees, transferees, and successors.

      f.      This Agreement and those documents executed in furtherance of this Agreement are the final expression of all the Parties' agreements, and supersedes all prior or contemporaneous negotiations, understandings, and agreements between the parties, whether oral or written. Any prior oral promises, representations, waivers, and courses of conduct are not relied upon and are of no further effect.

      g.      The paragraph headings used herein are for convenience only and are not a part of this Agreement and shall not be used to interpret it.

      h.      This Agreement shall be governed by the laws of the state of Idaho, without regard to its conflicts of law rules or principles. The Parties hereto agree to the courts of Idaho with respect to any action filed to enforce or in relation to this Agreement.

      i.      Singular terms used herein shall be read as if written in the plural when the context so requires or permits.

      j.      Duplicate originals of this Agreement shall be signed and each such signed duplicate original may serve as an original for all purposes.

      k.      If any provision of this Agreement is held to be illegal, invalid, or unenforceable for any reason, such illegality or invalidity shall not affect the remaining portions of this Agreement.

      l.      This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute a single, integrated and binding instrument. A faxed, photocopied, digital or scanned and emailed signature shall have the same force and effect as an original signature

Executed this 24th day of MAY, 2019.

**BUYER:**

**IAI GOLF, LLC**

By: _(signature)_
Name: KYLE A. MOWITZ
Its: AUTHORIZED SIGNER

**OPTIONEE:**

**TAMARCK MOUNTAIN OPERATIONS, LLC**

By: _(signature)_
Name: KYLE A. MOWITZ
Its: AUTHORIZED SIGNER

**SELLERS:**

**HOPKINS NORTHWEST FUND, LLC**

By: _(signature)_
Name: Randy Hopkins
Its: Plan Agent

**HOPKINS GROWTH FUND, LLC**

By: _(signature)_
Name: Randy Hopkins
Its: Plan Agent

**JOHNATHAN ZURKOFF**

_____

PURCHASE AND SALE AGREEMENT - 8

55809.0002.11943489.1

Executed this 21 day of MAY, 2019.

**BUYER:**

**IAI GOLF, LLC**

By: _____
Name: KYLE A. MANATT
Its: AUTHORIZED SIGNER

**OPTIONEE:**

**TAMARCK MOUNTAIN OPERATIONS, LLC**

By: _____
Name: KYLE A. MANATT
Its: AUTHORIZED SIGNER

**SELLERS:**

**HOPKINS NORTHWEST FUND, LLC**

By: _____
Name: Randy Hopkins
Its: Plan Agent

**HOPKINS GROWTH FUND, LLC**

By: _____
Name: Randy Hopkins
Its: Plan Agent

**JOHNATHAN ZURKOFF**

_____

PURCHASE AND SALE AGREEMENT - 8

55809.0002.11943489.1

## EXHIBIT 1.j.

## LEGAL DESCRIPTION OF SUBJECT PROPERTY

Four parcels of land located in Sections 5 and 8, Township 15 North, Range 3 East, Boise Meridian, Valley County, Idaho, more particularly described as follows:

Parcel A:
COMMENCING at the north 1/4 corner of said Section 5; thence along the north line of said Section 5,

- A.) S. 89° 27' 05" E., 296.16 feet; thence, departing said section line;
- B.) S. 0° 32' 55" W., 1537.60 feet to the POINT OF BEGINNING; thence,
- 1.) N. 86° 22' 47" E., 230.17 feet; thence,
- 2.) N. 77° 32' 59" E., 268.40 feet; thence,
- 3.) N. 70° 08' 24" E., 202.53 feet; thence,
- 4.) S. 69° 26' 41" E., 143.67 feet; thence,
- 5.) S. 89° 50' 07" E., 143.20 feet; thence,
- 6.) S. 75° 12' 40" E., 63.95 feet; thence,
- 7.) S. 61° 52' 53" E., 159.81 feet; thence,
- 8.) S. 71° 58' 25" E., 161.98 feet; thence,
- 9.) S. 35° 04' 12" E., 136.31 feet; thence,
- 10.) S. 14° 07' 03" E.; 132.00 feet; thence,
- 11.) S. 59° 40' 35" E., 272.48 feet; thence,
- 12.) S. 25° 53' 04" W., 276.18 feet; thence,
- 13.) S. 21° 23' 20" W., 502.77 feet; thence,
- 14.) S. 12° 45' 17" W., 169.07 feet; thence,

EXHIBIT 1.j. - 6

15.) S. 20° 06' 59" W., 663.00 feet; thence,

16.) S. 82° 26' 28" E., 444.78 feet; thence,

17.) S. 22° 35' 30" E., 392.70 feet; thence,

18.) S. 0° 05' 04" E., 163.10 feet; thence,

19.) S. 28° 16' 52" W., 394.85 feet; thence,

20.) S. 42° 47' 08" W., 829.09 feet; thence,

21.) S. 58° 17' 13" W., 291.47 feet; thence,

22.) S. 26° 21' 09" E., 316.06 feet; thence,

23.) S. 26° 15' 45" W., 122.10 feet to a point on the south line of said Section 5; thence, along said section line,

24.) S. 89° 56' 25" W., 585.80 feet to a point on the boundary of Tamarack Resort Planned Unit Development Phase 1; thence, along said boundary through the following courses:

25.) N. 4° 01' 06" E., 138.16 feet; thence,

26.) N. 16° 10' 36" E., 140.67 feet; thence,

27.) N. 2° 48' 29" E., 46.17 feet; thence,

28.) N. 24° 29' 12" W., 208.21 feet; thence,

29.) N. 2° 32' 19" E., 47.12 feet; thence,

30.) N. 28° 04' 26" E., 19.54 feet; thence,

31.) N. 39° 02' 59" E., 116.48 feet; thence,

32.) N. 43° 20' 51" E., 730.13 feet; thence,

33.) N. 40° 01' 59" W., 200.93 feet; thence,

34.) S. 87° 54' 29" W., 138.39 feet; thence,

35.) S. 70° 18' 13" W., 313.36 feet; thence,

36.) S. 78° 11' 10" W., 80.86 feet; thence,

37.) N. 73° 02' 13" W., 86.12 feet; thence,

EXHIBIT 1.j. - 7

55809.0002.11942240.1
55809.0002.11943489.1

38.) N. 49° 16' 48" W., 176.90 feet; thence,

39.) N. 48° 31' 25" W., 250.98 feet; thence,

40.) S. 43° 58' 05" W., 125.46 feet to a point on a non-tangent curve; thence,

41.) Northwesterly along said curve to the left having a radius of 205.00 feet, an arc length of 62.63 feet, through a central angle of 17° 30' 16", and a chord bearing and distance of N. 42° 44' 47" W., 62.39 feet; thence, tangent from said curve,

42.) N. 51° 29' 55" W., 245.10 feet to the beginning of a tangent curve; thence,

43.) Northwesterly along said curve to the left having a radius of 825.00 feet, an arc length of 128.61 feet, through a central angle of 8° 55' 56", and a chord bearing and distance of N. 55° 57' 53" W., 128.49 feet; thence,

44.) N. 62° 52' 29" E., 170.63 feet; thence,

45.) N. 06° 08' 21" W., 363.79 feet; thence,

46.) N. 69° 30' 18" W., 420.12 feet; thence,

47.) N. 43° 19' 35" W., 422.80 feet; thence,

48.) N. 13° 49' 07" W., 432.13 feet; thence,

49.) N. 20° 18' 50" W., 244.95 feet; thence,

50.) N. 32° 12' 25" E., 180.50 feet; thence,

51.) N. 53° 15' 28" E., 176.77 feet; thence,

52.) N. 69° 09' 56" E., 378.53 feet; thence,

53.) N. 16° 20' 42" E., 161.54 feet; thence,

54.) N. 59° 21' 40" E., 60.00 feet; thence,

55.) S. 86° 01' 23" E., 170.22 feet; thence,

56.) N. 56° 08' 22" E., 98.34 feet; thence,

57.) N. 75° 10' 48" E., 573.57 feet to the POINT OF BEGINNING.

EXHIBIT 1.j. - 8

Parcel B:
COMMENCING at the north 1/4 corner of said Section 8; thence, along the west line of the northwest 1/4 of the northeast 1/4 of said Section 8,

- A.) S. 0° 07' 41" W., 1325.76 feet to the C-N 1/16 corner of said Section 8; thence,
- B.) S. 89° 53' 46" E., 240.24 feet to the POINT OF BEGINNING; thence,
- 1.) S. 89° 53' 46" E., 1162.17 feet; thence,
- 2.) S. 15° 32' 21" E., 288.21 feet; thence,
- 3.) S. 45° 59' 25" E., 187.80 feet; thence,
- 4.) S. 0° 00' 00" E., 43.69 feet; thence,
- 5.) S. 51° 07' 48" W., 302.18 feet; thence,
- 6.) S. 20° 00' 03" W., 324.47 feet; thence,
- 7.) S. 36° 46' 50" W., 255.08 feet; thence,
- 8.) S. 9° 22' 20" W., 253.95 feet; thence,
- 9.) S. 20° 15' 09'" W., 213.84 feet; thence,
- 10.) N. 57° 05' 33" W., 586.31 feet; thence,
- 11.) N. 83° 17' 17" W., 328.92 feet; thence,
- 12.) S. 75° 08' 04" W., 252.38 feet; thence,
- 13.) S. 78° 09' 30" W., 191.69 feet; thence,
- 14.) N. 36° 21' 59" W., 141.59 feet; thence,
- 15.) N. 26° 23' 49" E., 152.89 feet; thence,
- 16.) N. 68° 16' 04" W., 378.45 feet; thence,
- 17.) N. 11° 43' 53" W., 84.70 feet; thence,
- 18.) N. 82° 23' 28" E., 162.44 feet; thence,
- 19.) S. 87° 47' 57" E., 172.45 feet; thence,
- 20.) N. 69° 50' 16" E., 135.18 feet; thence,

EXHIBIT 1.j. - 9

55809.0002.11942240.1
55809.0002.11943489.1

21.) N. 82° 23' 28" E., 217.18 feet; thence,

22.) N. 72° 38' 14" E., 221.45 feet; thence,

23.) N. 12° 20' 03" E., 279.94 feet; thence,

24.) N. 6° 26' 52" W., 377.77 feet; thence,

25.) N. 22° 03' 29" W., 77.55 feet to the POINT OF BEGINNING

**Parcel C:**
All that certain lot, piece or parcel of land, situate in Valley County, Idaho, and shown as Lot 11, Block 19, of Tamarack Resort Planned Unit Development, Phase 1 Village, a plat which is recorded in the office of the Recorder of Valley County, Idaho.

**Parcel D:**
All that certain lot, piece or parcel of land, situate in Valley County, Idaho, and shown as Lot 12, Block 19, of Tamarack Resort Planned Unit Development, Phase I Village, a plat which is recorded in the office of the Recorder of Valley County, Idaho.

**PARCEL E FOR THE BENEFIT OF PARCELS A THRU D:**

Together with an easement for ingress and egress, a 30 foot wide strip of land, 15 feet either side of the following centerline.

COMMENCING at the north ¼ corner of said Section 5; thence, along the north line of said Section 5,

A.) S.89° 27'05"E., 842.30 feet; thence, departing said section line,

B.) S.19°38'29"W, 371.11 feet; thence,

C.) S.71°02'32"E, 54.96 feet to the POINT OF BEGINNING; thence,

D.) Southwesterly along a curve to the left with a radius of 80.00 feet, an arc length of 68.91 feet, through a central angle of 48°50'21", and a chord bearing and distance of S.0°23'51W., 66.15 feet; thence, tangent from said curve,

E.) S.24°01'19"E., 54.34 feet to the beginning of a tangent curve; thence,

F.) Southeasterly along said curve to the left with a radius of 84.00 feet, an arc length of 31.84 feet, through a central angle of 21°43'14", and a chord bearing and distance of S.34°52'56"E., 31.65 feet; thence,

**EXHIBIT 1.j. - 10**

55809.0002.11942240.1
55809.0002.11943489.1

G.) Southwesterly along said curve to the right with a radius of 130.00 feet, an arc length of 211.53 feet, through a central angle of 93°13'42", and a chord bearing and distance of S.0°52'18"W., 188.95 feet; thence, tangent from said curve,

H.) S.47°29'09"W., 163.59 feet to the beginning of a tangent curve; thence,

I.) Southwesterly along said curve to the left with a radius of 350.00 feet, an arc length of 183.81 feet, through a central angle of 30°05'23", and a chord bearing and distance of S.32°26'28"W., 181.70 feet to the POINT OF TERMINATION

EXHIBIT 1.j. - 11